E-FILED
Friday, 11 February, 2022 10:23:21 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| WADE BONK, | ) | |
| | ) | |
| Petitioner-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 17-cr-10061-001-JES |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Respondent-Plaintiff. | ) | |

## <u>ORDER AND OPINION</u>

Before the Court is Petitioner-Defendant Wade Bonk's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 173). Mr. Bonk argues that, in light of *United States v. Carnell,* 972 F.3d 932 (7th Cir. 2020), he was erroneously found responsible for ice methamphetamine as opposed to methamphetamine mixture based statements from drug users, dealers, and/ or law enforcement. Mr. Bonk argues that both his trial and appellate counsel were ineffective for failing to raise this argument, and also should have challenged the indictment for failing to allege ice methamphetamine was involved. As explained below, the Court finds that Mr. Bonk did not receive ineffective assistance of counsel despite the later holding in *Carnell* that, if applied, may have positively impacted his sentencing guidelines range. Accordingly, the Court DENIES Mr. Bonk's § 2255 Motion (d/e 173) and DECLINES to issue a certificate of appealability.

### I.  BACKGROUND

Mr. Bonk, along with Darcy Kampas and Timothy Wood, was part of a conspiracy to distribute a substantial amount of methamphetamine in the central Illinois area. Mr. Bonk personally consumed some of the 1.5 kilograms of ice methamphetamine for which he was held

responsible, but also sold the methamphetamine to distributers, including his co-defendant Wood. *See* PSR ¶¶ 4-20; 103 (d/e 127). The conspiracy ended on September 15, 2017, when Kampas was pulled over for speeding and methamphetamine was subsequently found in her car. In December 2017, Mr. Bonk, along with Kampas and Wood, were charged by superseding indictment with conspiracy to distribute and possess with intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *See* Superseding Indictment (d/e 35).

Mr. Bonk pled guilty in July 2018, without a written plea agreement. *See* July 6, 2018 Minute Entry. At the change of plea hearing, Mr. Bonk affirmed that he was satisfied with his trial counsel's (Mr. Sharbel Rantisi's) representation, that no one had made him any promises or assurances to get him to plead guilty, and no one had forced or threatened him to pled guilty. Plea Tr. at 13 (d/e 153). Prior to pleading guilty, the Government recited the factual basis for the plea, including the inner workings of conspiracy, the routine trips Mr. Bonk would take to purchase methamphetamine, and the recovery of Mr. Bonk's purported drug ledger. The Government also stated that they would provide evidence that "the methamphetamine in this case [is] actual or ice methamphetamine with that 80 percent or higher purity, not substance and mixture" based on D.E.A. laboratory analysis reports and several witnesses. *Id.* at 17-21. Mr. Bonk's counsel explained that his advisory sentencing guidelines range could vary greatly based on the findings of probation and produce a base offense level between 31 and 42 without considering the career offender status and his criminal history would be category VI. *Id.* at 22. With that range, Mr. Bonk's counsel estimated that his advisory sentencing guidelines range would be anywhere between 188 months to life imprisonment. *Id.* at 23. The Court advised Mr. Bonk that the estimate was only an estimate, the guidelines were only advisory, and that Mr.

Bonk could be sentenced anywhere within the statutory range. Mr. Bonk then pled guilty and the Court found that the guilty plea was voluntary and knowing. *Id.* at 25.

After resolving objections in earlier versions, the United State Probation Office prepared a third revised Presentence Investigation Report (PSR) prior to the sentencing hearing. *See* PSR (d/e 127). This final report found Mr. Bonk responsible for 1540.15 grams of ice methamphetamine. To qualify as "ice" under the sentencing guidelines, the methamphetamine must be at least 80 percent pure. The report indicated that 25.3 grams had a purity level of 98 percent, and 83.2 grams had a purity level of 84 percent based on laboratory testing. *See* PSR ¶¶ 18-19. However, the remaining drug quantities that were attributed to Mr. Bonk did not specify in detail why the drug was presumed to be ice methamphetamine as opposed to methamphetamine mixture. *See* PSR ¶ 8 (finding 453.6 grams of ice methamphetamine attributable to Mr. Bonk apparently based on statements from co-conspirators but noting that the initial drugs supplied were "not of good quality"); PSR ¶ 10 (finding 805.45 grams of ice methamphetamine attributable to Mr. Bonk based on statements of coconspirators without any indication of purity listed in the report); PSR ¶ 15 (finding 170.1 grams of ice methamphetamine attributable to Mr. Bonk based on statements of coconspirators without any indication of purity listed in the report). Due to the drug quantity finding and the finding that the methamphetamine was ice, Mr. Bonk's base offense level was calculated as 36. Along with a two-point enhancement for his role in the offense, his adjusted base offense level was 38. The PSR also found that Mr. Bonk was a career offender under USSG §4B1.1, but because the career offender base offense level was lower (37), the higher adjusted offense level applied. After a three-point reduction for acceptance of responsibility, his total offense level was 35. *See* PSR ¶ 26-35. Combined with his criminal history score of VI (which would have been his score with or

without the career offender designation due to his 34 criminal history points stemming from 24 separate adult convictions), his sentencing guidelines range was 292 to 365 months' imprisonment.  *See* PSR ¶120.

Had Mr. Bonk's drug quantity been calculated as methamphetamine mixture as opposed to ice methamphetamine, his base offense level would only have been lowered to 37 because of his career offender designation.  *See* PSR ¶ 32.  After a three-point reduction for acceptance of responsibility, his total offense level would have been 34.  Combined with his criminal history score of VI, his sentencing guidelines range would have been 262 to 327.

The third revised PSR referenced Mr. Bonk's objections to the enhancement for Mr. Bonk's role in the offense, to the number of trips he made with one of his coconspirators and the corresponding drug quantity for which he was found responsible, as well as an objection related to a potential firearms enhancement that had already been removed in this third revision.  By sentencing, Mr. Bonk's counsel indicated that all objections had been resolved and requested that the objections be stricken from the final PSR so that no mention of a firearm remained in the PSR that might hinder Mr. Bonk's ability to participate and benefit from the Residential Drug Abuse Program (RDAP) while in prison.  Sent. Tr. at 7-8 (d/e 156).  The Court granted the defense's request to strike the objections from a final PSR.  *Id*; Altered Revised PSR (d/e 133).

Mr. Bonk's sentencing hearing was held on May 19, 2019.  Trial counsel presented expert testimony of Dr. Kirk Witherspoon, a psychologist who had prepared a mitigation report. Mr. Bonk's brother in mitigation.  *See* Sent. Tr. 15-57 (d/e 156).  Trial counsel argued that the disparity in sentencing guidelines ranges between methamphetamine mixture and actual (ice) methamphetamine was not justified.  *Id.* at 98.  Counsel also argued that the career offender status was not empirically justified, and highlighted the support of Mr. Bonk's family.  *Id.* at

104.  Trial counsel asked the Court to sentence Mr. Bonk using a sentencing guidelines range of 188 to 235 months, which would have been his sentencing range had the career offender guideline not applied and had the drugs been found to be methamphetamine mixture.  *Id.* at 77-78.  The Government highlighted Mr. Bonk's lengthy criminal history and asked the Court to impose an above-guidelines sentence of 365 months' imprisonment.  *Id.* at 88-90.

The Court then sentenced Mr. Bonk to a below-guidelines sentence of 262 months' imprisonment to be served concurrently with lengthy state court prison sentences.  *Id.* at 117-119; Judgment (d/e 134).  The Court explained that while the conspiracy did not last long, it "moved a lot of drugs in the process."  *Id.* at 116.  Further, the Court noted Mr. Bonk's lengthy and violent criminal history, which did not "give [his attorney] much to work with" in asking for a lower sentence.  *Id.*

Mr. Bonk appealed and was represented by Steven Jesser on appeal.  Shortly after filing the notice of appeal, appellate counsel filed a motion for release of all sealed documents on the court record.  *See* d/e 162.  While the motion was granted in part, the Court denied counsel's request for access to the sentencing recommendation regarding Bonk.  *See* d/e 163.  On appeal, Mr. Bonk argued that the Court erred in denying his motion to obtain all unsealed documents and that the Court abused its discretion in not granting a further downward departure from the recommended sentencing range.  The Seventh Circuit affirmed the judgment on July 24, 2020. *United States v. Bonk*, 967 F.3d 643, 651 (7th Cir. 2020).  The Seventh Circuit concluded that there was no merit to Mr. Bonk's complaint about the reasonableness of his sentence and that the district court had adequately justified its reasons for imposing the below-guidelines sentence (even though it was still above what Mr. Bonk had requested).  *Id.*

Mr. Bonk then filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 173) on July 16, 2021. Mr. Bonk alleges that counsel was ineffective for failing to challenge the indictment based on the indictment's failure to allege drug purity (Ground One). Mr. Bonk also argues that trial counsel was ineffective for failing to object to the drug purity finding at sentencing (Ground Three) and that appellate counsel was ineffective for failing to raise this issue on appeal (Ground Two). Mr. Bonk also argued that trial counsel gave him inadequate pre-plea advice (Ground Four), but has withdrawn this argument in his reply. *See* Reply at 10 (d/e 186). The Government has filed a response in opposition (d/e 180), which includes an affidavit from trial counsel, Sharbel Rantisi, and an affidavit from appellate counsel, Steven Jesser. Mr. Bonk has filed a reply. *See* d/e 186. This Order now follows.

## II. LEGAL STANDARD

Section 2255, "the federal prisoner's substitute for habeas corpus," *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012), permits a prisoner incarcerated pursuant to an Act of Congress to request that his sentence be vacated, set aside, or corrected if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is appropriate for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quotation marks omitted). And, while a § 2255 Motion is not a substitute for a direct appeal or to raise arguments that could have been raised on direct appeal but were not, a "failure to raise an ineffective-assistance-of-counsel

claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Here Mr. Bonk's claims are raised under the umbrella of his Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). To succeed on an ineffective assistance of counsel claim, a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690. A petitioner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991).

### III. DISCUSSION

### A. Mr. Bonk's Proposed Challenge to the Indictment Is Frivolous.

Mr. Bonk argues that his indictment was defective because it did not indicate the drug purity, and that counsel was ineffective for failing to challenge the indictment. Mr. Bonk focuses on appellate counsel's failure to raise this argument on appeal, but, as the Government notes, it makes sense to consider if trial counsel was also ineffective for failing to raise this point. However, Mr. Bonk's indictment defect argument is meritless, so counsel was not deficient and Mr. Bonk was not prejudiced when this argument was not raised.

Indictments are to be read practically and as a whole, rather than in a hyper technical manner. *United States v. Dooley,* 578 F.3d 582, 590 (7th Cir. 2009). For an indictment to be

sufficient, "it must identify the elements of the crime, fairly inform the defendant of the charge

so that he may prepare a defense, and enable the defendant to evaluate any double jeopardy

problems." *United States v. Phillips*, 645 F.3d 859, 861 (7th Cir. 2011) (citing *See Hamling v.*

*United States,* 418 U.S. 87, 117–18, 94 S.Ct. 2887 (1974); *United States v. Glecier,* 923 F.2d

496, 499 (7th Cir.1991)).  Nothing more is required.  *Id.*  Generally, an indictment in the words

of the statute itself, which sets forth the elements of the crime, is sufficient. *United States v.*

*Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981).

The superseding indictment charged Mr. Bonk in Count One, titled "Conspiracy to

Distribute and Possess with Intent to Distribute Methamphetamine."  Superseding Indictment

(d/e 35).  The Grand Jury charged that:

> From approximately in or about late May 2017 and continuing through September
> 15, 2017, in Tazewell and Peoria Counties and elsewhere, in the Central District
> of Illinois, the defendants,
>
> WADE BONK,
> DARCY KAMPAS, and
> TIMOTHY WOOD,
>
> did knowingly and intentionally combine, conspire, and agree with persons
> known and unknown to the grand jury to commit certain acts in violation of Title
> 21, United States Code, Section 841(a)(1), that is, to knowingly and intentionally
> distribute and possess with intent to distribute at least 50 grams of
> methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C.
> 841(a)(1) and (b)(1)(A),
>
> All in violation of Title 21, United States Code, Sections 846.

*Id.*

Here, the only issue Mr. Bonk raises with the superseding indictment is that it did not

allege drug purity.  Specifically, he argues that it did not explicitly state whether the

methamphetamine being charged was a mixture or ice/actual.  However, whether the

methamphetamine was a mixture or ice only matters for determining the advisory sentencing

guidelines level, drug purity is not an element of the offense.  On this point, Mr. Bonk appears to

believe the guidelines calculations have, in essence, raised his statutory maximum sentence

based on its methamphetamine purity findings.  However, the sentencing guidelines are only

*advisory*, the Court was not bound by the guidelines and was permitted to sentence Mr. Bonk

anywhere within the statutory range of ten years to life imprisonment.  *See United States v.*

*Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) (holding that the sentencing guidelines may only be

advisory and not mandatory to comply with the constitution).  Accordingly, it only matters that

the indictment stated a crime under the relevant statute.  In 21 U.S.C. § 841(b)(1)(A), in listing

out quantities and qualities of controlled substances that establish a sentence with the highest

mandatory minimum, the statute states in pertinent part, "50 grams or more of

methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture

or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of

its isomers."  21 U.S.C. § 841(b)(1)(A)(viii).[1]  Mr. Bonk does not dispute that the Government

had sufficient evidence to show that he was responsible for at least 50 grams or more of

methamphetamine.  *See also* PSR ¶¶ 18-19.  And, more importantly, the indictment tracked the

language of the statute when it charged that the conspiracy involved "at least 50 grams of

methamphetamine."  Accordingly, any argument by counsel that the indictment was defective for

failing to allege drug purity would have failed.  Counsel was not ineffective for failing to raise a

meritless argument.  *See Resnick v. United States*, 7 F.4th 611, 621 (7th Cir. 2021) ("As we have

held, counsel does not need to raise meritless arguments." (*citing Long v. United States*, 847 F.3d

916, 920 (7th Cir. 2017)).

---

[1] In Mr. Bonk's Motion, he incorrectly states that the statute states "50 grams of more of <u>actual</u> methamphetamine." However, the word "actual" does not appear in the statute.

Mr. Bonk's Motion focuses on his claim that appellate counsel should have raised the indictment challenge on appeal. Defendants have a right to effective counsel on appeal, which includes "the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments." *Smith v. Robbins*, 528 U.S. 259, 278, n.10 (2000) (citations omitted). However, "this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Id.* at 278. By the time of appellate review, Mr. Bonk's claim was waived. Under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, an objection to a defect in the indictment must be made by pretrial motion or it is waived. *See* Fed. R. Crim. P. 12(b)(3)(B)(v) (expressly including "failure to state an offense"); *United States v. Muresanu*, 951 F.3d 833, 839 (7th Cir. 2020). He could have had success on direct appeal raising an untimely challenge only if he could show that his indictment was "so obviously defective as not to charge the offense by any reasonable construction." *United States v. Barrios-Ramos*, 732 F. App'x 457, 459 (7th Cir. 2018) (citing *United States v. Sandoval*, 347 F.3d 627, 633 (7th Cir. 2003)). As explained above, the indictment was not defective, and certainly not "so obviously defective as not to charge the offense by any reasonable construction." Accordingly, the Court finds that appellate counsel was not ineffective for failing to bring this frivolous claim and instead focusing on at least potentially meritorious arguments.

### B. Mr. Bonk's Counsel Was Not Ineffective for Failing to Challenge to the Methamphetamine Purity Findings in PSR.

Mr. Bonk's remaining two claims relate to trial counsel's failure to contest the drug purity findings in the PSR, as well as his appellate counsel's failure to raise this argument on appeal. Mr. Bonk's drug purity claim relies on *United States v. Carnell,* 972 F.3d 932 (7th Cir.

2020).  In *Carnell*, the Seventh Circuit held, as a matter of first impression, that evidence from drug users and dealers regarding the purity of methamphetamine was insufficient to meet the Government's burden of proof by a preponderance of the evidence to show that methamphetamine that a defendant was responsible for under the sentencing guidelines qualified as "ice."  *Id.* at 942.  Notably, in *Carnell*, while methamphetamine from a separate but related conspiracy had been tested and found to be 100 percent pure, none of the methamphetamine that the defendant had been found responsible for under the sentencing guidelines had been tested by a laboratory to determine purity.  *Id.*  The only evidence regarding methamphetamine purity was testimony from users and dealers.  *Id.*

Here, in light of *Carnell,*  Mr. Bonk may have had a valid claim that at least some of the methamphetamine involved in the conspiracy was not ice.  Mr. Bonk was held responsible for 1540.15 grams of ice methamphetamine.  As the Government highlights, unlike *Carnell*, some of the methamphetamine for which Mr. Bonk was responsible for in the PSR had been tested by a laboratory: 25.3 grams had a purity level of 98 percent, and 83.2 grams had a purity level of 84 percent.  *See* PSR ¶¶ 18-19.  The rest of the methamphetamine attributed to him in the PSR, however did not specify why the drug was presumed to be ice methamphetamine as opposed to methamphetamine, but appeared to be relying on statements from drug dealers and users.  *See* PSR ¶ 8 (finding 453.6 grams of ice methamphetamine attributable to Mr. Bonk apparently based on statements from co-conspirators but noting that the initial drugs supplied were "not of good quality"); PSR ¶ 10 (finding 805.45 grams of ice methamphetamine attributable to Mr. Bonk based on statements of coconspirators without any indication of purity listed in the report); PSR ¶ 15 (finding 170.1 grams of ice methamphetamine attributable to Mr. Bonk based on statements of coconspirators without any indication of purity listed in the report).  Notably, 453.6

grams of methamphetamine were supplied from a source that Mr. Bonk and a codefendant had

beaten up based on the alleged *poor* quality of the drugs.  The Government argues that the Court

could permissibly have found that the non-tested methamphetamine was ice based on the tested

methamphetamine.  However, the Court cannot agree that the evidence supplied in the PSR

would have been sufficient to find by the preponderance of the evidence that all 1540.15 grams

were ice without impermissibly relying on statements from drug users or dealers.  Moreover, Mr.

Bonk also alleges that the tested methamphetamine came from different sources than the

untested methamphetamine and that statements from his codefendants in the discovery would

support this allegation.  At the very least, Mr. Bonk has made a strong case that, after *Carnell*,

his drug purity findings would have been different.

However, the record is muddled as to whether Mr. Bonk was prejudiced by counsel not

raising the argument at the time.  Had Mr. Bonk's drug quantity been calculated as primarily

methamphetamine mixture as opposed to ice methamphetamine, his base offense level would

have been 37 because of his career offender designation.  *See* PSR ¶ 32.  After a three-point

reduction for acceptance of responsibility, his total offense level would have been 34.  Combined

with his criminal history score of VI, his sentencing guidelines range would have been 262 to

327—only slightly lower than his sentencing guidelines range at sentencing of 292 to 365.  The

Government argues that because Mr. Bonk was sentenced at the low end of this guideline range,

that Mr. Bonk cannot show prejudice.  However, because the Court was willing to sentence a

below guidelines sentence and relied on the drug quantity findings in reaching its sentence, Mr.

Bonk could conceivably have received a different sentence if the guidelines range had been

correctly calculated.  Moreover, the Seventh Circuit has found similar circumstances sufficient to

show prejudice.  *See Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021) ("In most cases

a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016)).

On the other hand, the record shows that other enhancements were contemplated in the PSR, including a potential firearm enhancement and a higher potential leadership enhancement, but that the parties mutually agreed to forego these objections.  Had Mr. Bonk objected to the drug purity findings, the Government may have sought to include these enhancements. Accordingly, it is at least possible that, had Mr. Bonk succeeded with lowing his base offense level to 32 (which applies for a finding of at least 1.5 kilograms but less than 5 kilograms of non-ice methamphetamine), he may still have had an adjusted offense level of 38 after a two-point firearms enhancement and a four-point leadership enhancement.  By not arguing against the drug purity findings, counsel did not risk application of these additional enhancements, but yet was still able to argue against the impact of the purity findings by pointing to established caselaw that found that the methamphetamine mixture and ice sentencing disparity was not empirically based. *See, e.g.,* Sentencing Memo. at 3-10 (d/e 129) (citing *United States v. Ibarra-Sandoval*, 265 F.Supp.3d 1249, 1255 (D. New Mexico, 2017); *United States v. Harry*, 313 F.Supp.3d 969, 973 (N.D. Iowa, 2018); *United States v. Nawanna*, 321 F.Supp.3d 943, 951 (N.D. Iowa, 2018); *United States. v. Ortega*, 2010 WL 1994870 at 7 (D. Nebraska, 2010).  Counsel's affidavit shows that he did not have consciously consider arguing against the drug purity findings using the argument that was ultimately successful in *Carnell*.  Nonetheless, it may have been a benefit to Mr. Bonk that the argument was not thought of and presented, as it avoided opening him up to additional aggravating evidence at sentencing and jeopardizing any potential placements in RDAP.  *See* Sent. Tr. at 7-8 (d/e 156).  Accordingly, while the Court can only speculate as to

what arguments the parties would have pursued had this objection been raised, the record at least leaves doubt as to whether Mr. Bonk was truly prejudiced by the omission of the objection given the law at the time.

But, the Court need not rely on the speculative nature of the prejudice in this case to deny Mr. Bonk's claim because the Court finds counsel was not deficient for failing to invent this argument. Trial counsel and appellate counsel's affidavits confirm that neither one of them considered a *Carnell*-type argument. Of course, neither counsel would have been able to rely on *Carnell* itself: *Carnell* was not decided until August 28, 2020, long after Mr. Bonk's May 19, 2019 sentencing hearing, and shortly after Mr. Bonk's direct appeal was decided on July 24, 2020. Nonetheless, "[i]n some circumstances, defense counsel may be required to anticipate arguments foreshadowed but not yet adopted by existing case law." *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021). In *Bridges*, a § 2255 petitioner argued that defense counsel was ineffective for failing to argue that his convictions for Hobbs Act robbery were not convictions of "crimes of violence," and, therefore, should not have been used to enhance his sentence under the career offender Sentencing Guideline. *Id.* at 799. The district court had denied the motion and declined to hold an evidentiary hearing. *Id.* The Seventh Circuit held that petitioner's underlying argument was correct and his Hobbs Act robbery convictions did not qualify as "crimes of violence." *Id.* at 802. The Seventh Circuit next found that "the district court's decision not to hold a hearing was an abuse of discretion because it rested on the erroneous legal conclusion that counsel's failure to anticipate this career offender argument could not constitute ineffective assistance of counsel in the absence of controlling circuit precedent." *Id.* at 807. The Seventh Circuit noted that the Tenth Circuit had already reached the issue prior to the petitioner's guilty plea and "[w]ith modern methods of legal research, it would

not have taken long in 2018 for counsel to have found the Tenth Circuit decision holding that Hobbs Act robbery is not a crime of violence under the 2016 guideline amendment." *Id.* at 805. However, the Seventh Circuit made clear that counsel's conduct was not necessarily deficient: "[i]t is possible that defense counsel had a reasonable sentencing strategy that deserves deference." *Id.* at 807. The case was remanded to the district court for an evidentiary hearing. *Id.*

Here, unlike *Bridges,* the successful *Carnell* argument had not been successfully raised in other circuits or other courts. In fact, in the argument had been *unsuccessfully* raised in the Eighth Circuit. The Seventh Circuit in *Carnell* explicitly rejected the Eighth Circuit's decisions in *United States v. Walker,* 688 F.3d 416, 423–25 (8th Cir. 2012), and *United States v. Lugo*, 702 F.3d 1086, 1090–91 (8th Cir. 2013). These cases held that methamphetamine purity level findings could rely on the same evidence that is relied on in the crack and cocaine context: dealers, users, and law enforcement officers. Given this caselaw, as well as the favorable caselaw at the time for arguing that the methamphetamine mixture and ice disparity in the sentencing guidelines was not empirically justified, the Court cannot find that trial counsel's failure to discover and pursue such a novel argument was deficient conduct. *See also, Williams v. United States*, No. 19-CV-3226, 2021 WL 4952494, at *6 (C.D. Ill. Oct. 25, 2021) (distinguishing *Bridges* based on the lack of a directly on-point published decision because in *Bridges* "defense counsel would have had only to discover the argument through research rather than to invent the argument himself."). Accordingly, the Court finds that trial counsel's assistance was not ineffective when he failed to raise this (at the time) novel argument.

For similar reasons, the Court finds that appellate counsel was not ineffective for failing to raise the argument. The argument had not been raised below, so Mr. Bonk would have needed

to satisfy the plain error standard and establish that: "(1) there was error, (2) it was plain, (3) it affected his substantial rights and (4) the court should exercise its discretion to correct the error because it seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Hopper*, 11 F.4th 561, 570 (7th Cir. 2021), *reh'g denied* (Dec. 3, 2021) (quoting *United States v. Jumah*, 599 F.3d 799, 811 (7th Cir. 2010)).  Assuming Mr. Bonk would have been able to show an error, he would not have succeeded at showing the error was plain.  "An error is plain if it is 'clear or obvious' at the time of appeal. To be clear or obvious, '[i]t cannot be subtle, arcane, debatable, or factually complicated,'. . . but must be 'contrary to well-settled law.'" *Hopper*, 11 F.4th at 572 (internal citations omitted).  Here, there was no controlling precedent at the time of appeal and Eighth Circuit caselaw pointed squarely in the other direction.  Accordingly, the error was not plain, and Mr. Bonk's argument would have been unsuccessful on appeal.  Mr. Bonk can show neither prejudice nor that his counsel was deficient for failing to raise the novel issue when he would not have been successful on appeal.  Therefore, his claim of ineffective assistance of counsel on appeal must be denied.

Finally, in his reply, Mr. Bonk appears to concede that appellate counsel may not have been ineffective, but that he is still entitled to relief because the Court erred by incorrectly calculating the guidelines.  However, errors in calculating an advisory sentencing guidelines range do not amount to a miscarriage of justice that can be remedied on collateral review either.  *See Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir.), *opinion supplemented on denial of reh'g*, 724 F.3d 915 (7th Cir. 2013); *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 16, 2014); *Hanson v. United States,* 941 F.3d 874, 876 (7th Cir. 2019).  As the Seventh Circuit explained in *Hawkins,* after the sentencing guidelines became advisory, a "judge may not even *presume* that a sentence within

the applicable guidelines range would be proper.  He must determine whether it is consistent

with the sentencing considerations set forth in 18 U.S.C. § 3553(a), and if he finds it is not he

may not impose it even though it is within the applicable guidelines range." *Hawkins*, 706 F.3d

at 822.  Even had the judge not made the alleged error in calculating the guidelines range, the

judge still would not be *required* to give a lower a sentence.  *Id.* at 824.  Accordingly, the

Seventh Circuit found that "a sentence that is well below the ceiling imposed by Congress  . . .

[cannot] be considered a 'miscarriage of justice' that can be collaterally attacked, just because

the judge committed a mistake en route to imposing it." *Id.* at 824-25.  The Seventh Circuit

acknowledged that the error might not be harmless, "but not every error is corrigible in a

postconviction proceeding, even if the error is not harmless." *Id.* at 823; *see also Coleman,* 763

F.3d at 710.  Mr. Bonk was sentenced well under the statutory maximum of life imprisonment.

Any errors in his sentencing guidelines calculations do not represent a miscarriage of justice that

can be addressed on collateral review.  Accordingly, this claim is denied as well.

## IV. EVIDENTIARY HEARING

An evidentiary hearing is not always necessary in § 2255 cases.  *See Bruce v. United*

*States*, 256 F.3d 592, 597 (7th Cir. 2001).  However, "[a] hearing is required unless the record

conclusively shows that the movant is not entitled to relief." *Hicks v. United States*, 886 F.3d

648, 650 (7th Cir. 2018); 8 U.S.C. § 2255(b).  Here, no hearing is necessary, because Mr. Bonk's

claims do not entitle him to relief even if all the facts he alleged are true.

## V.  CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of

appealability.  *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of

appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a

certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court finds that Mr. Bonk has not made a substantial showing that he received ineffective assistance of counsel. Further, his attempts to raise his arguments as stand-alone claims fail because they are not cognizable in collateral review and/or meritless. Accordingly, the Court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, the Court DENIES Petitioner-Defendant Wade Bonk's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 173). The Court DECLINES to issue a certificate of appealability. The Clerk is directed to enter judgment and close the accompanying civil case, No. 21-cv-1204.


**Signed on this 11th day of February 2022.**

*/s/ James E. Shadid*
James E. Shadid
United States District Judge

## NOTICE

Petitioner is informed that if he wishes to contest this Order, he has two options.  He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.  If Petitioner chooses to go straight to the Seventh Circuit, he must file a notice of appeal within 60 days from the entry of judgment or order appealed from.  Fed. R. App. P. 4(a)(1)(A).  The deadline can be extended for a short time only if Petitioner files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time.  Fed. R. App. P. 4(a)(5)(A), (C).  *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Additionally, Petitioner will only be allowed to proceed on his appeal if he obtains a certificate of appealability.  Here, the undersigned District Judge has already declined to issue a certificate of appealability.  Thus, Petitioner must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.  The current cost of filing an appeal with the Seventh Circuit is $505.00.  The filing fee is due at the time the notice of appeal is filed.  Fed. R. App. P. 3(e).  If Petitioner cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal in forma pauperis ("IFP motion") along with a recent statement for his prison trust fund account.  *See* Fed. R. App. P. 24(a)(1)(C).  The IFP motion must set forth the issues Petitioner plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1).

He will then be required to make monthly payments until the entire filing fee is paid.  28 U.S.C. § 1915(b)(2).

On the other hand, if Petitioner wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).  The motion must be filed within twenty-eight (28) days of the entry of judgment, and the deadline cannot be extended.  Fed. R. Civ. P. 59(e); 6(b)(2).  The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010).  *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-day clock for filing a notice of appeal will be stopped.  Fed. R. App. P. 4(a)(4).  The clock will start anew once the undersigned rules on the Rule 59(e) motion.  Fed. R. App. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii).  To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment.  *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977).  Again, this deadline can be extended only on a written motion by Petitioner showing excusable neglect or good cause.